**UNITED STATES of America, Plaintiff,**

v.

**Robert M. SCHARRINGHAUSEN Defendant.**

No. 03–CV–0551 W(RBB).

United States District Court, S.D. California.

Jan. 7, 2005.

Jeremy N. Hendon, Norma J. Schrock, United States Department of Justice, Washington, DC, U.S. Attorney CV, U.S. Attorneys Office Southern District of California, San Diego, CA, for Plaintiff.

Richard Leo Fahey, Lieb and Lieb, David S. Greenberg, Law Office of David S. Greenberg, San Diego, CA, for Defendant.

## ORDER DENYING MOTION TO VACATE DEFAULT JUDGMENT

WHELAN, District Judge.

Presently before the Court is Defendant's Rule 60(b) motion to set aside the Court's default judgment entered on November 6, 2003. Plaintiff timely opposed. All parties are represented by counsel. The Court decides the matter on the papers submitted and without oral argument pursuant to Civil Local Rule 7.1(d.1).

## I. *BACKGROUND*

On March 23, 2003 the United States commenced this tax assessment action against Defendant seeking to collect federal income tax liabilities for the 1991 and 1992 tax years as well as trust fund recovery penalty assessments pursuant to 26 U.S.C. § 6672. On April 11, 2003 the summons and a copy of the complaint were personally served on Defendant. Defendant did not timely answer the complaint or request an extension of time to do so.

On July 3, 2003 the government obtained an entry of default against Defendant. On November 6, 2003 the Court granted a default judgment against Defendant. Defendant has acknowledged receiving the original summons and complaint, the government's request for default entry and the government's default judgment motion.

On December 1, 2003 the government served post-judgment discovery requests on Defendant. Defendant failed to respond in any way to the requests. On March 11, 2004 the government moved to compel Defendant's response to its discovery requests.

After an April 19, 2004 hearing, at which Defendant appeared for the first time, the Court granted the government's motion to compel and awarded the government costs associated with bringing the motion. On July 9, 2004 Defendant responded to the government's post-judgment discovery requests by asserting his Fifth Amendment right against self-incrimination and refusing to answer nearly all of the discovery requests.

On September 20, 2004 United States Magistrate Judge Ruben B. Brooks conducted a hearing on the validity of Defendant's blanket Fifth Amendment assertions regarding the discovery requests. Magistrate Judge Brooks ruled that the Fifth Amendment excused Defendant from responding to only a small number of requests and ordered that Defendant respond to the remaining requests no later than October 20, 2004.

Instead of responding to the requests, Defendant filed an October 12, 2004 declaration asking the Court to stay the September 20 order, toll the time for appeal, and prevent the government from enforcing the judgment against Defendant. By order dated October 18, 2004 Magistrate Judge Brooks denied Defendant's request.

On October 19, 2004 Defendant filed a motion to stay with the Ninth Circuit, which promptly denied Defendant's request for lack of appellate jurisdiction the following day. On October 22, 2004 Defendant filed an *ex parte* application seeking a stay of Magistrate Judge Brook's order based on lack of "magisterial jurisdiction" and improper application of Fifth Amendment standards. Defendant also sought to stay all other post-judgment efforts to enforce the November 6, 2003 default judgment until the Court ruled on its propriety.

On November 4, 2004 the Court *sua sponte* tolled the Rule 60(b) motion filing deadline. Shortly thereafter, the Court denied Defendant's *ex parte* request and ordered that any motion to set aside the default judgment be filed no later than November 29, 2004. On November 29, 2004 Defendant filled this Rule 60(b) motion seeking relief from the default judgment entered in favor of the United States on November 6, 2003. Plaintiff timely opposed. For the reasons set forth below, the Court **DENIES** Defendant's request for Rule 60(b) relief.

## II. LEGAL STANDARD

Motions to vacate default judgments are governed by Rule 60(b) of the Federal Rules of Civil Procedure. Subsection (b)(1) grants district courts discretion to relieve a party from a judgment or order for reason of "mistake, inadvertence, surprise, or excusable neglect," provided that the party moves for such relief within one year. *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 695 (9th Cir.2001).

## III. DISCUSSION

In weighing Defendant's motion to set aside entry of default judgment, the Court must examine three factors: (1) whether Defendant's culpable conduct led to the default, (2) whether Defendant has a meritorious defense and (3) whether reopening the default judgment would prejudice Plaintiff. *TCI Group Life Ins. Plan*, 244 F.3d at 696; *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir.1984). "This tripartite test is disjunctive. Hence, a finding that the plaintiff will be prejudiced, *or* that the defendant lacks a meritorious defense, *or* that the defendant's own culpable conduct prompted the default is sufficient to justify the district court's refusal to vacate a default judgment." *Cassidy v. Tenorio*, 856 F.2d 1412, 1415 (9th Cir.1988) (emphasis in original). As with any motion brought under Rule 60(b), the party seeking to vacate a default judgment bears the burden of demonstrating that the aforementioned factors favor vacating the judgment. *Cassidy*, 856 F.2d at 1415.

### A. DEFENDANT'S CULPABLE CONDUCT REQUIRES DENIAL OF RULE 60(B) RELIEF.

Defendant contends that his conduct is excusable rather than culpable because he "has never once tried to manipulate the legal process to avoid addressing the merits of this dispute." Defendant's Motion at 9. The crux of Defendant's assertion is that he retained a tax attorney who mistakenly advised him

that there was nothing he could do about the lawsuit because it was merely the government's way of continuing to try and collect the amounts Defendant allegedly owed in outstanding assessments.[1] Defendant's Motion at 10. According to Defendant, he believed that an offer in compromise made directly to the Internal Revenue Service in May of 2003 was a sufficient response to the summons and complaint. Defendant's Motion at 11. Defendant claims that his reliance on his attorney's mistaken advice excuses his failure to timely answer the summons and complaint. The Court disagrees.

The Ninth Circuit defines culpable conduct for Rule 60(b) purposes as conduct for which "there is no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond." *TCI Group Life Ins. Plan,* 244 F.3d at 698. As the Ninth Circuit explained:

> Neglectful failure to answer as to which the defendant offers a credible, good faith explanation negating any intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process is not 'intentional' under our default cases, and is therefore not *necessarily*—although it certainly may be, once the equitable factors are considered—culpable or inexcusable.

*Id.* at 697–98. The Court finds that Defendant's default was due to his own culpable conduct.

Several factors support the Court's conclusion. As a threshold matter, even if taken as true, Defendant's claim that he relied on his attorney's mistaken advice does not allow him to escape the consequences of his default. It has long been the rule that litigants cannot avoid the consequences of their attorneys' acts or omissions. *Link v. Wabash Railroad Co.,* 370 U.S. 626, 633–34, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962) ("Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent."). Thus, Defen-

dant's failure to answer is not excused by reliance on his attorney's advice.

In addition, Defendant's claim that he relied on his attorney's advice, in contravention of the express instructions in the summons stating that he had 20 days from the complaint's service to file a response in this Court, lacks credibility. Defendant's well-documented prior experience with litigation in both the Federal and State court systems reveals Defendant's general familiarity with legal proceedings and an appreciation of the consequences of failing to answer the complaint. Plaintiff's Opposition at 6; *see e.g. Meadows v. Dominican Republic,* 817 F.2d 517, 522 (9th Cir.1987) (holding that foreign defendants conduct was culpable where they were sufficiently experienced in American legal requirements to protect their interests); *TCI Group Life Ins. Plan,* 244 F.3d at 699 n. 6. In light of Defendant's extensive prior litigation experience, his contention that he relied on his attorney's mistaken advice (or misunderstood his attorney's advice) and believed that he need not file a response to the summons and complaint in this Court strains credulity.

■ Even if Defendant could not be bound by the acts of his attorney and his claim of mistaken/misunderstood attorney advice were credible, Defendant's contention that based on his lawyer's advice he believed this lawsuit was being addressed by the offer in compromise he made directly to the IRS is unavailing. It is undisputed that Defendant was personally served with the summons and complaint on April 11, 2003 making his responsive pleading due no later than May 1, 2003. According to Defendant, he submitted his offer in compromise to the IRS on May 19, 2003, eighteen days *after* his response to the complaint was due. *See* Defendant's Motion at 4. The fact that Defendant had *already* defaulted by the time he submitted his offer in compromise belies his claim that he thought the offer in compromise satisfied his obligation to respond to this lawsuit. Even if Defendant truly did believe his offer in compromise was the proper response to the sum-

---

**1.** It is unclear from Defendant's motion whether his claim is that his lawyer provided him with inaccurate advice, that he misunderstood his lawyer's advice or both. Since the Court's analysis is the same in either situation, the Court need not resolve the issue.

mons and complaint, he has provided the Court with no explanation for why it too was late.

Finally, Defendant's actions throughout this litigation demonstrate that his failure to answer is not excused by a credible, good faith explanation. *See TCI Group Ins. Plan,* 244 F.3d at 698–99 (noting that courts have examined a litigant's diligence throughout the litigation in determining whether default was excused by a good faith explanation). Defendant did not appear in this action until nearly a year after the government served it despite his undisputed receipt of the summons and complaint on April 11, 2003, the government's motion for the entry of default and motion for default judgment. Moreover, when Defendant did finally appear in this action it was not to move to set aside the default judgment entered on November 6, 2003 but rather to oppose the government's motion to compel responses to its post-judgment discovery requests—requests to which the Defendant had failed to respond in any way.

Indeed, Defendant waited over eleven months after the November 6, 2003 default judgment to even address it and then did so via an *ex parte* application seeking to stay the government's post-judgment enforcement efforts. Although the Court extended the time period in which Defendant could file a properly noticed Rule 60(b) motion to set aside the default judgment, the Court made clear in its order that Defendant's conduct in defending this action has not been diligent. *See* November 12, 2004 Order at 4 (Doc. No. 68–1) ("Defendant's continued lack of diligence in defending this action further compels this Court to conclude that it shall decline Defendant's request for a stay in post-judgment enforcement efforts.").

Taken together, Defendant's actions in defending this lawsuit and his explanation for those actions, when one was offered, demonstrate that the default resulted from his culpable conduct. *See Meadows,* 817 F.2d at 522 (defendants, the Dominican Republic and a Dominican public housing agency, were culpable in not answering the complaint because they were "aware of the relevant federal law, ... fully informed of the legal consequences of failing to respond, ... and sufficiently sophisticated and experienced in the requirements of American law to protect [their] interests"); *Direct Mail Specialists, Inc. v. Eclat Computerized Tech., Inc.,* 840 F.2d 685, 690 (9th Cir.1988) (defendant was "a lawyer, presumably ... well aware of the dangers of ignoring service of process"); *Benny v. Pipes,* 799 F.2d 489, 494 (9th Cir.1986) (defendants' failure to answer complaint was culpable when defendants had first filed motions to extend their time to answer, indicating an ability to deal with legal requirements). Accordingly, on this ground alone the Court denies Defendant's motion for Rule 60(b) relief. *See Cassidy,* 856 F.2d at 1415.

## B. *DEFENDANT HAS FAILED TO PRESENT SPECIFIC FACTS THAT WOULD CONSTITUTE A DEFENSE.*

Although the Court need not reach the remaining factors in the Rule 60(b) analysis because the Court has concluded that Defendant's failure to act was culpable, Defendant has likewise failed to present specific facts that would constitute a defense. *See Madsen v. Bumb,* 419 F.2d 4, 6 (9th Cir.1969) (holding that district court properly denied request to set aside default judgment based on defendant's general denial of liability). Defendant contends that he can assert a meritorious defense because the government (1) did not meet its burden of proof for the penalty assessments, (2) should be estopped from collecting in litigation what Defendant has offered to compromise and (3) violated Defendant's due process rights by failing to provide him proper notice of the motion for the entry of default.

### 1. Penalty Assessments

In this action the government seeks to collect trust fund recovery penalties assessed against Defendant pursuant to 26 U.S.C. § 6672 for his alleged failure to properly collect, account for and pay over to the United States income taxes withheld from employee paychecks for the 1990 and 1991

tax years.[2] Although not heavy, the burden is on Defendant to produce specific facts supporting a defense to the government's claim. *See TCI Group Ins. Plan,* 244 F.3d at 700.

Defendant contends that the IRS Forms 4340, Certificates of Assessments and Payments ("Forms 4340") submitted by the government do not establish his liability for the trust fund recovery penalty assessments. Specifically, Defendant claims that the mere existence of the Forms 4340 does not establish the next logical inference required by section 6672, namely that Defendant was a "responsible person" who acted "willfully." *See Davis v. United States,* 961 F.2d 867, 869–70 (9th Cir.1992).[3]

In tax assessment cases, the government bears the initial burden of proof. *Palmer v. Internal Revenue Service,* 116 F.3d 1309, 1312 (9th Cir.1997). The government can carry its initial burden by the introduction of Forms 4340. See *Koff v. United States,* 3 F.3d 1297, 1298 (9th Cir.1993) ("Certificates of Assessments and Payments are probative evidence in and of themselves and, in the absence of contrary evidence, are sufficient to establish that . . . assessments were properly made."); *Hughes v. United States,* 953 F.2d 531, 535 (9th Cir.1992). Forms 4340 are admissible as self-authenticating official records. *Hughes,* 953 F.2d at 540.

IRS deficiency determinations and assessments are generally entitled to a presumption of correctness. *Palmer,* 116 F.3d at 1312. "[This] presumption shifts the burden of proof to the taxpayers to show that the determination is incorrect." *Id.* Thus, after the government establishes its *prima facie* case by introducing deficiency determina-

tions and assessments, Defendant must show that the government's assessment was incorrect by either establishing that he was not a responsible person under the statute or that he did not willfully fail to pay the amounts due to the IRS. *Palmer,* 116 F.3d at 1312; *Davis,* 961 F.2d at 869–70.

Here, Defendant does not dispute that the United States submitted proper Forms 4340 with its second motion for default judgment, which the Court granted in November of 2003.[4] *See* Declaration of Norma J. Schrock, submitted in support of the United States' Second Motion for Entry of Default Judgment, Exhibits C–D (Doc. No. 11–1). These forms contain entries which show that the penalties at issue in this action were duly assessed and recorded and that notice was provided to Defendant. *See id.* As these assessments are entitled to a presumption of correctness, the government has carried its burden of proof and the burden shifts to Defendant. *Palmer,* 116 F.3d at 1312.

Defendant has provided no facts suggesting that he can carry his burden to show that the assessments were improper. The only facts that Defendant has provided are bald assertions that the Forms 4340 submitted by the government, by themselves, do not prove his liability for the penalty assessments. Instead of producing facts that affirmatively demonstrate that he is not liable for the penalty assessment, Defendant has chosen to rely solely on attacks directed at the sufficiency of the government's evidence. However, because Defendant does not dispute that the Forms 4340 submitted by the United States are proper, they are entitled to a presumption of correctness and the Court

---

**2.** Notably, Defendant does not discuss his federal income tax liabilities for the 1991 and 1992 tax years, which are also part of this action. Accordingly, the Court finds that Defendant has conceded that he cannot assert a meritorious defense to these assessments.

**3.** Although Defendant also contends that there are "mistakes" in the IRS record as to the trust fund recovery penalties consisting of duplicative tax liens, he does not challenge the accuracy of liabilities themselves or the timeliness of their assessment. Thus, these arguments do not support a conclusion that Rule 60(b) relief is warranted.

**4.** The Court finds Defendant's argument regarding the improper Forms 4340 the United States submitted with its original motion for default judgment utterly irrelevant. The Court's November 6, 2003 order granting the United States a default judgment was founded on the Forms 4340 submitted by the United States in connection with its second motion for default judgment, which Defendant does not dispute were proper, not the forms submitted with the government's original motion.

concludes that they satisfy the government's initial burden of proof. Thus, Defendant's broad denial of the Forms 4340's sufficiency does not demonstrate that he has a meritorious defense to the trust fund recovery penalty assessments at issue in this action. *See Madsen,* 419 F.2d at 6.

### 2. Estoppel Based on Defendant's Submission of an Offer in Compromise to the IRS

■ Defendant next contends that the government should be estopped because of the government's alleged misconduct in connection with his offer in compromise to the IRS. However, Defendant has failed to provide any facts which support a meritorious estoppel defense.

In addition to the normal estoppel factors, a party seeking to estop the government must demonstrate that (1) the government has engaged in affirmative misconduct going beyond mere negligence; and (2) the government's act will cause serious injustice and the imposition of estoppel will not unduly harm the public interest. *Pauly v. U.S. Dep't of Ag.,* 348 F.3d 1143, 1149 (9th Cir.2003). Although Defendant alleges a number of facts which he claims demonstrate the government's affirmative misconduct, he does not explain *why* the government's alleged actions amount to misconduct, let alone misconduct "beyond mere negligence." *Id.* (alleged government misrepresentations insufficient to show affirmative misconduct beyond negligence absent allegations that the misrepresentations were deliberate or fraudulent). Nor does Defendant provide any specific facts supporting a conclusion that the government's alleged acts of misconduct will cause "serious injustice." Accordingly, the Court concludes that Defendant has failed to present specific facts supporting a meritorious estoppel defense.

### 3. Defendant's Due Process Defense is Meritless.

■ Defendant's final claim that the default judgment should be set aside because the government allegedly failed to notify him that the hearing date for the United States' second default judgment motion had been changed is entirely without merit. Since Defendant had not yet appeared in this action at the time the government brought its second default judgment motion, he was not entitled to notice. *See* FED. R. CIV. P. 55(b)(2) (requiring notice of a default judgment motion only if the party has appeared in the action). Nevertheless, the government served Defendant with an amended notice for its second motion for default judgment containing the new hearing date via U.S. Mail on October 20, 2003. *See* Declaration of Jeremy N. Hendon, Ex. A.

Even if Defendant did not have proper notice of the hearing date, the Court finds Defendant's claim that he would have appeared to oppose the default judgment motion specious when he failed to respond to the complaint, the request for entry of default, the government's first default judgment motion or the government's post-judgment discovery requests. Thus, the Court concludes that Defendant has not asserted any specific facts supporting his alleged due process defense.

As discussed above, the Court finds that Defendant has failed to assert any specific facts supporting a meritorious defense to this tax assessment action. Accordingly, this factor also supports denial of Defendant's request for Rule 60(b) relief.

### C. *THE UNITED STATES WOULD BE PREJUDICED BY REOPENING THIS ACTION.*

■ Finally, reopening the default judgment could prejudice the United States. *TCI Group Life Ins. Plan,* 244 F.3d at 701. "To be prejudicial, the setting aside of a judgment must result in greater harm than simply delaying resolution of the case." *Id.* If a delay will result in "tangible harm such as loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion" the delay is considered prejudicial. *Id.* quoting *Thompson v. American Home Assurance Co.,* 95 F.3d 429, 433–34 (6th Cir. 1996).

The government has received evidence through its Offshore Credit Card Project that Defendant may be concealing assets and

income in offshore jurisdictions as well as hiding and moving assets around. *See* Declaration of IRS Revenue Agent Huong T. Phan, filed in Case No. 02–CV2076 H(LAB), attached to Defendant's Notice of Lodgement of Motion to Set Aside November 6, 2003 Default Judgment (Doc. No. 76–1). Thus, the delay resulting from reopening this action would prejudice the United States by providing Defendant with a greater opportunity to conceal assets in an attempt to avoid his tax liabilities, a process in which Defendant may already be engaged.

Although Defendant belatedly filed evidentiary objections to some of the statements in Ms. Phan's declaration, Defendant can hardly be heard to complain about the admissibility of evidence *he* submitted in support of his motion to set aside the Court's default judgment. In addition, Defendant's claim that the government's delay in bringing this action to reduce Defendant's tax liabilities to a judgment demonstrates that the government does not have a legitimate fear that he is indeed concealing assets is without merit. Defendant has more incentive now, after having default judgment entered, than ever to conceal assets in an attempt to avoid his tax liabilities. Accordingly, the Court concludes that denial of Rule 60(b) relief is warranted to prevent the government from being prejudiced by any further delay in this action.

## IV. *CONCLUSION AND ORDER*

In light of the foregoing, the Court **DENIES** Defendant's Rule 60(b) motion to set aside entry of default judgment. (Doc. No. 69–1.) This case shall remain closed.

**IT IS SO ORDERED.**